# DIGITAL EQUIPMENT CORP. *v.* DESKTOP DIRECT, INC.

No. 93–405. Argued February 22, 1994—Decided June 6, 1994

864

SOUTER, J., delivered the opinion for a unanimous Court.

*John G. Roberts, Jr.,* argued the cause for petitioner. With him on the briefs were *David G. Leitch, Laurence R. Hefter, David M. Kelly,* and *Thomas C. Siekman.*

*Rex E. Lee* argued the cause for respondent. With him on the brief were *Carter G. Phillips, Gene C. Schaerr, Janet M. Letson, John Paul Kennedy,* and *H. Ross Workman.\**

JUSTICE SOUTER delivered the opinion of the Court.

Section 1291 of the Judicial Code confines appeals as of right to those from "final decisions of the district courts." 28 U. S. C. § 1291. This case raises the question whether an order vacating a dismissal predicated on the parties' settlement agreement is final as a collateral order even without a district court's resolution of the underlying cause of action. See *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541, 546 (1949). We hold that an order denying effect to a settlement agreement does not come within the narrow ambit of collateral orders.

I

Respondent, Desktop Direct, Inc. (Desktop), sells computers and like equipment under the trade name "Desktop Direct." Petitioner, Digital Equipment Corporation, is engaged in a similar business and in late 1991 began using that trade name to market a new service it called "Desktop Direct from Digital." In response, Desktop filed this action in the

---

*\*James W. Geriak* filed a brief for Spectra-Physics, Inc., et al. as *amici curiae* urging reversal.

United States District Court for the District of Utah, charging Digital with unlawful use of the Desktop Direct name. Desktop sent Digital a copy of the complaint, and negotiations between officers of the two corporations ensued. Under a confidential settlement reached on March 25, 1992, Digital agreed to pay Desktop a sum of money for the right to use the "Desktop Direct" trade name and corresponding trademark, and for waiver of all damages and dismissal of the suit. That same day, Desktop filed a notice of dismissal in the District Court.

Several months later, Desktop moved to vacate the dismissal and rescind the settlement agreement, alleging misrepresentation of material facts during settlement negotiations. The District Court granted the motion, concluding "that a fact finder could determine that [Digital] failed to disclose material facts to [Desktop] during settlement negotiations which would have resulted in rejection of the settlement offer." App. to Pet. for Cert. 13a. After the District Court declined to reconsider that ruling or stay its order vacating dismissal, Digital appealed.

The Court of Appeals for the Tenth Circuit dismissed the appeal for lack of jurisdiction, holding that the District Court order was not appealable under § 1291, because it neither "end[ed] the litigation on the merits" nor "[fell] within the long-recognized 'collateral order' exception to the final judgment requirement." 993 F. 2d 755, 757 (1993). Applying the three-pronged test for determining when "collateral order" appeal is allowed, see *Cohen, supra; Coopers & Lybrand* v. *Livesay,* 437 U. S. 463 (1978), the Court of Appeals concluded that any benefits claimed under the settlement agreement were insufficiently "important" to warrant the immediate appeal as of right. Although Digital claimed what it styled a "right not to go to trial," the court reasoned that any such privately negotiated right as Digital sought to vindicate was different in kind from an immunity rooted in an explicit constitutional or statutory provision or "compel-

ling public policy rationale," the denial of which has been held to be immediately appealable. 993 F. 2d, at 758–760.[1]

The Tenth Circuit recognized that it was thus deviating from the rule followed in some other Courts of Appeals, see *Forbus* v. *Sears, Roebuck & Co.*, 958 F. 2d 1036 (CA11 1992); *Grillet* v. *Sears, Roebuck & Co.*, 927 F. 2d 217 (CA5 1991); *Janneh* v. *GAF Corp.*, 887 F. 2d 432 (CA2 1989); but see *Transtech Industries, Inc.* v. *A & Z Septic Clean*, 5 F. 3d 51 (CA3 1993), cert. pending, No. 93–960. We granted certiorari, 510 U. S. 942 (1993), to resolve this conflict and now affirm.

## II

### A

The collateral order doctrine is best understood not as an exception to the "final decision" rule laid down by Congress in § 1291, but as a "practical construction" of it, *Cohen, supra,* at 546; see, *e. g., Coopers & Lybrand, supra,* at 468. We have repeatedly held that the statute entitles a party to appeal not only from a district court decision that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment," *Catlin* v. *United States,* 324 U. S. 229, 233 (1945), but also from a narrow class of decisions that do not terminate the litigation, but must, in the interest of "achieving a healthy legal system," cf. *Cobbledick* v. *United States,* 309 U. S. 323, 326 (1940), nonetheless be treated as "final." The latter category comprises only those district court decisions that are conclusive, that resolve important questions completely separate from the merits, and that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action. See generally *Coopers & Lybrand, supra.* Immediate appeals from such orders, we have ex-

---

[1] The Tenth Circuit also denied Digital's request to stay the District Court proceedings. We granted a stay pending our disposition of Digital's petition for certiorari. 510 U. S. 804 (1993).

plained, do not go against the grain of § 1291, with its object of efficient administration of justice in the federal courts, see generally *Richardson-Merrell Inc.* v. *Koller*, 472 U. S. 424 (1985).

But we have also repeatedly stressed that the "narrow" exception should stay that way and never be allowed to swallow the general rule, *id.*, at 436, that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated, see *United States* v. *Hollywood Motor Car Co.*, 458 U. S. 263, 270 (1982). We have accordingly described the conditions for collateral order appeal as stringent, see, *e. g., Midland Asphalt Corp.* v. *United States*, 489 U. S. 794, 799 (1989), and have warned that the issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a "particular injustic[e]" averted, *Van Cauwenberghe* v. *Biard*, 486 U. S. 517, 529 (1988), by a prompt appellate court decision. See also *Richardson-Merrell, supra*, at 439 (this Court "has expressly rejected efforts to reduce the finality requirement of § 1291 to a case-by-case [appealability] determination"); *Carroll* v. *United States*, 354 U. S. 394, 405 (1957).

## B

Here, the Court of Appeals accepted Digital's claim that the order vacating dismissal (and so rescinding the settlement agreement) was the "final word on the subject addressed," 993 F. 2d, at 757 (citation omitted), and held the second *Cohen* condition, separability, to be satisfied, as well. Neither conclusion is beyond question,[2] but each is best left

_____

[2] It might be argued that given the District Court's "somewhat cryptic" reference, 993 F. 2d, at 757, to what "a trier of fact could determine," its recision order here was merely "tentative," *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463, 469, n. 11 (1978), and thus inadequate under the first *Cohen* test, or that the basis for vacating, Digital's alleged misrepre-

untouched here, both because Desktop has made no serious effort to defend the Court of Appeals' judgment on those points and because the failure to meet the third condition of the *Cohen* test, that the decision on an "important" question be "effectively unreviewable" upon final judgment, would in itself suffice to foreclose immediate appeal under § 1291.[3] Turning to these dispositive factors, we conclude, despite Digital's position that it holds a "right not to stand trial" requiring protection by way of immediate appeal, that rights under private settlement agreements can be adequately vindicated on appeal from final judgment.

## C

The roots of Digital's argument that the settlement with Desktop gave it a "right not to stand trial altogether" (and that such a right *per se* satisfies the third *Cohen* requirement) are readily traced to *Abney* v. *United States*, 431 U. S. 651 (1977), where we held that § 1291 entitles a criminal defendant to appeal an adverse ruling on a double jeopardy claim, without waiting for the conclusion of his trial. After holding the second *Cohen* requirement satisfied by the distinction between the former jeopardy claim and the question of guilt to be resolved at trial, we emphasized that the Fifth Amendment not only secures the right to be free from multi-

---

sentations about when it first learned of Desktop's use of the trade name, was so "enmeshed in the factual and legal issues comprising the plaintiff's cause of action," 437 U. S., at 469 (internal quotation marks omitted), *i. e.,* whether Digital (willfully) misappropriated the name, as to elude *Cohen*'s second requirement for collateral order appeal. Indeed, it is possible that the District Court phrased its order here in equivocal terms precisely because it assumed that this lack of separability would preclude any immediate appeal under § 1291.

[3] We have of course held that the *Cohen* requirements go to an appellate court's subject-matter jurisdiction, see *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U. S. 368, 379 (1981), and thus, were it necessary here, we would be obliged to assess whether each condition was met, without regard to whether the parties believe it to be satisfied.

ple punishments, but by its very terms embodies the broader principle, "'deeply ingrained in . . . the Anglo-American system of jurisprudence,'" that it is intolerable for "'the State, with all its resources . . . to make repeated attempts to convict an individual [defendant], thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity.'" 431 U. S., at 661–662 (quoting *Green* v. *United States*, 355 U. S. 184, 187–188 (1957)). We found that immediate appeal was the only way to give "full protection" to this constitutional right "not to face trial at all." 431 U. S., at 662, and n. 7; see also *Helstoski* v. *Meanor*, 442 U. S. 500 (1979) (decision denying immunity under the Speech and Debate Clause would be appealable under § 1291).

*Abney*'s rationale was applied in *Nixon* v. *Fitzgerald*, 457 U. S. 731, 742 (1982), where we held to be similarly appealable an order denying the petitioner absolute immunity from suit for civil damages arising from actions taken while petitioner was President of the United States. Seeing this immunity as a "functionally mandated incident of the President's unique office, rooted in the . . . separation of powers and supported by our history," *id.*, at 749, we stressed that it served "compelling public ends," *id.*, at 758, and would be irretrievably lost if the former President were not allowed an immediate appeal to vindicate this right to be free from the rigors of trial, see *id.*, at 752, n. 32.

Next, in *Mitchell* v. *Forsyth*, 472 U. S. 511 (1985), we held that similar considerations supported appeal under § 1291 from decisions denying government officials qualified immunity from damages suits. An "essential attribute," *id.*, at 525, of this freedom from suit for past conduct not violative of clearly established law, we explained, is the "entitlement not to stand trial or face the other burdens of litigation," *id.*, at 526, one which would be "effectively lost if a case [were] erroneously permitted to go to trial," *ibid.* Echoing the reasoning of *Nixon* v. *Fitzgerald, supra* (and *Harlow* v. *Fitz-*

*gerald*, 457 U. S. 800 (1982)), we explained that requiring an official with a colorable immunity claim to defend a suit for damages would be "peculiarly disruptive of effective government," and would work the very "distraction . . . from . . . dut[y], inhibition of discretionary action, and deterrence of able people from public service" that qualified immunity was meant to avoid. See 472 U. S., at 526 (internal quotation marks omitted); see also *Puerto Rico Aqueduct and Sewer Authority* v. *Metcalf & Eddy, Inc.*, 506 U. S. 139, 147 (1993) (State's Eleventh Amendment immunity from suit in federal court may be vindicated by immediate appeal under § 1291).

## D

Digital puts this case on all fours with *Mitchell.* It maintains that it obtained dual rights under the settlement agreement with Desktop, not only a broad defense to liability but the "right not to stand trial," the latter being just like the qualified immunity held immediately appealable in *Mitchell.* As in *Mitchell*, that right must be enforceable on collateral order appeal, Digital asserts, or an adverse trial ruling will destroy it forever.

While Digital's argument may exert some pull on a narrow analysis, it does not hold up under the broad scrutiny to which all claims of immediate appealability under § 1291 must be subjected. To be sure, *Abney* and *Mitchell* are fairly cited for the proposition that orders denying certain immunities are strong candidates for prompt appeal under § 1291. But Digital's larger contention, that a party's ability to characterize a district court's decision as denying an irreparable "right not to stand trial" altogether is sufficient as well as necessary for a collateral order appeal, is neither an accurate distillation of our case law nor an appealing prospect for adding to it.

Even as they have recognized the need for immediate appeals under § 1291 to vindicate rights that would be "irretrievably lost," *Richardson-Merrell*, 472 U. S., at 431, if re-

view were confined to final judgments only, our cases have been at least as emphatic in recognizing that the jurisdiction of the courts of appeals should not, and cannot, depend on a party's agility in so characterizing the right asserted. This must be so because the strong bias of §1291 against piecemeal appeals almost never operates without some cost. A fully litigated case can no more be untried than the law's proverbial bell can be unrung, and almost every pretrial or trial order might be called "effectively unreviewable" in the sense that relief from error can never extend to rewriting history. Thus, erroneous evidentiary rulings, grants or denials of attorney disqualification, see, *e. g., Richardson-Merrell, supra,* and restrictions on the rights of intervening parties, see *Stringfellow* v. *Concerned Neighbors in Action,* 480 U. S. 370 (1987), may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment, cf. *Carroll,* 354 U. S., at 406; *Parr* v. *United States,* 351 U. S. 513, 519–520 (1956); and other errors, real enough, will not seem serious enough to warrant reversal at all, when reviewed after a long trial on the merits, see *Stringfellow, supra.* In still other cases, see *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463 (1978), an erroneous district court decision will, as a practical matter, sound the "death knell" for many plaintiffs' claims that might have gone forward if prompt error correction had been an option. But if immediate appellate review were available every such time, Congress's final decision rule would end up a pretty puny one, and so the mere identification of some interest that would be "irretrievably lost" has never sufficed to meet the third *Cohen* requirement. See generally *Lauro Lines s.r.l.* v. *Chasser,* 490 U. S. 495, 499 (1989) ("It is always true, however, that 'there is value . . . in triumphing before trial, rather than after it'") (quoting *United States* v. *MacDonald,* 435 U. S. 850, 860, n. 7 (1978)); *Richardson-Merrell, supra,* at 436.

Nor does limiting the focus to whether the interest asserted may be called a "right not to stand trial" offer much protection against the urge to push the § 1291 limits. We have, after all, acknowledged that virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a "right not to stand trial," see, *e. g.*, *Midland Asphalt*, 489 U. S., at 501; *Van Cauwenberghe* v. *Biard*, 486 U. S., at 524. Allowing immediate appeals to vindicate every such right would move § 1291 aside for claims that the district court lacks personal jurisdiction, see *Van Cauwenberghe, supra,* that the statute of limitations has run, see 15B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3918.5, and n. 65, p. 521 (1992), that the movant has been denied his Sixth Amendment right to a speedy trial, see *MacDonald, supra,* that an action is barred on claim preclusion principles, that no material fact is in dispute and the moving party is entitled to judgment as a matter of law, or merely that the complaint fails to state a claim. Such motions can be made in virtually every case, see generally *id.,* at 862; *United States* v. *Hollywood Motor Car Co.,* 458 U. S., at 270, and it would be no consolation that a party's meritless summary judgment motion or res judicata claim was rejected on immediate appeal; the damage to the efficient and congressionally mandated allocation of judicial responsibility would be done, and any improper purpose the appellant might have had in saddling its opponent with cost and delay would be accomplished. Cf. *Richardson-Merrell, supra,* at 434 (appeals from "entirely proper" decisions impose the same costs as do appeals from "injudicious" ones). Thus, precisely because candor forces us to acknowledge that there is no single, "obviously correct way to characterize" an asserted right, *Lauro Lines, supra,* at 500, we have held that § 1291 requires courts of appeals to view claims of a "right not to be tried" with skepticism, if not a jaundiced eye. Cf. *Van Cauwenberghe, supra,* at 524–525.

In *Midland Asphalt*, for example, we had no trouble in dispatching a defendant's claim of entitlement to an immediate appeal from an order denying dismissal for alleged violation of Federal Rule of Criminal Procedure 6(e), forbidding disclosure of secret grand jury information. Noting "'a crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges,'" 489 U. S., at 801, quoting *Hollywood Motor Car, supra*, at 269, we observed that Rule 6(e) "contains no hint," 489 U. S., at 802, of an immunity from trial, and we contrasted that Rule with the Fifth Amendment's express provision that "[n]o person shall be held to answer" for a serious crime absent grand jury indictment. Only such an "explicit statutory or constitutional guarantee that trial will not occur," we suggested, *id.*, at 801, could be grounds for an immediate appeal of right under § 1291.[4]

The characterization issue surfaced again (and more ominously for Digital, see *infra*, at 880) in *Lauro Lines, supra*, where a defendant sought to appeal under § 1291 from an order denying effect to a contractual provision that a Neapolitan court would be the forum for trying all disputes arising from the parties' cruise-ship agreement. While we realized of course that the value of the forum-selection clause would be diminished if the defendant could be tried before appealing, we saw the contractual right to limit trial to an Italian forum as "different in kind" from the entitlement to "avoid

---

[4] That reasoning echoed our decision one Term earlier in *Van Cauwenberghe* v. *Biard*, 486 U. S. 517 (1988), where we unanimously rejected the contention that a defendant brought to the United States under an extradition treaty could appeal immediately under § 1291 from a decision denying a motion to dismiss based on the principle of "specialty," which he asserted immunized him from service of civil process in the United States. Even if such an immunity might supply a basis for vacating a judgment on appeal, we held, the right "should be characterized as the right not to be subject to a binding judgment of the court," and so understood, it could therefore "be effectively vindicated following final judgment." *Id.*, at 526–527.

suit altogether" that *Abney* and *Mitchell* held could be "adequately vindica[ted]" only on immediate appeal.   490 U. S., at 501.

E

As Digital reads the cases, the only things standing in the way of an appeal to perfect its claimed rights under the settlement agreement are the lone statement in *Midland Asphalt*, to the effect that only explicit statutory and constitutional immunities may be appealed immediately under § 1291, and language (said to be stray) repeated in many of our collateral order decisions, suggesting that the "importance" of the right asserted is an independent condition of appealability.   See Brief for Petitioner 28–34.   The first, Digital explains, cannot be reconciled with *Mitchell*'s holding, that denial of qualified immunity (which we would be hard pressed to call "explicitly . . . guarantee[d]" by a particular constitutional or statutory provision) is a collateral order under § 1291; as between *Mitchell* and the *Midland Asphalt* dictum, Digital says, the dictum must give way.   As for the second obstacle, Digital adamantly maintains that "importance" has no place in a doctrine justified as supplying a gloss on Congress's "final decision" language.

1

These arguments miss the mark.   First, even if *Mitchell* could not be squared fully with the literal words of the *Midland Asphalt* sentence (but cf. *Lauro Lines*, 490 U. S., at 499, noting that *Midland Asphalt* was a criminal case and *Mitchell* was not), that would be only because the qualified immunity right is inexplicit, not because it lacks a good pedigree in public law.   Indeed, the insight that explicitness may not be needed for jurisdiction consistent with § 1291 only leaves Digital with the unenviable task of explaining why other rights that might fairly be said to include an (implicit) "right to avoid trial" aspect are less in need of protection by immediate review, or more readily vindicated on appeal from final

judgment, than the (claimed) privately negotiated right to be free from suit. It is far from clear, for example, why § 1291 should bless a party who bargained for the right to avoid trial, but not a party who "purchased" the right by having once prevailed at trial and now pleads res judicata, see *In re Corrugated Container Antitrust Litigation* v. *Willamette Industries, Inc.*, 694 F. 2d 1041 (CA5 1983); or a party who seeks shelter under the statute of limitations, see, *e. g.*, *United States* v. *Weiss*, 7 F. 3d 1088 (CA2 1993), which is usually understood to secure the same sort of "repose" that Digital seeks to vindicate here, see Brief for Petitioner 25; or a party not even subject to a claim on which relief could be granted. See also *Cobbledick*, 309 U. S., at 325 ("Bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship"); *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U. S. 368, 378 (1981) ("[P]otential harm" should be compared to "the harm resulting from other interlocutory orders that may be erroneous") (internal quotation marks omitted).

Digital answers that the status under § 1291 of these other (seemingly analogous) rights should not give us pause, because the text and structure of this particular settlement with Desktop confer what no res judicata claimant could ever have, an express right not to stand trial.[5] But we cannot attach much significance one way or another to the supposed clarity of the agreement's terms in this case. To ground a ruling here on whether this settlement agreement in terms confers the prized "right not to stand trial" (a point Desktop by no means concedes) would flout our own frequent admonitions, see, *e. g.*, *Van Cauwenberghe*, 486 U. S., at 529, that availability of collateral order appeal must be determined at

---

[5] But cf. *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, 429–430 (1934) ("'[T]he laws which subsist at the time and place of the making of a contract . . . enter into and form a part of it, as if they were expressly referred to . . . in its terms'") (quoting *Von Hoffman* v. *City of Quincy*, 4 Wall. 535, 550 (1867)).

a higher level of generality. Indeed, just because it would be the rare settlement agreement that could not be construed to include (at least an implicit) freedom-from-trial "aspect," we decide this case on the assumption that if Digital prevailed here, any district court order denying effect to a settlement agreement could be appealed immediately. (And even if form were held to matter, settlement agreements would all include "immunity from suit" language a good deal plainer than what Digital relies on here, see Tr. of Oral Arg. 44.) See also *Van Cauwenberghe, supra,* at 524 ("For purposes of determining appealability, . . . we will assume, but do not decide, that petitioner has presented a substantial claim" on the merits).[6]

2

The more fundamental response, however, to the claim that an agreement's provision for immunity from trial can

---

[6] Similarly, we must reject as patently irrelevant for § 1291 purposes Digital's repeated claims that the District Court applied the "wrong legal standard" in granting Desktop's motion to vacate the dismissal order. If Digital is right that a settlement agreement confers a contractual "immunity from suit," that protection is no more "irretrievably lost," and thus no more appealable under § 1291, when a district court applies an erroneous legal standard than when it commits a plain vanilla mistake in misapplying the proper standard.

Nor do we accept uncritically Digital's novel and highly convenient contention that such a right to be free from trial is, either in this case or generally, more valuable than other rights conferred by a settlement agreement. See *infra,* at 881–882. While Digital emphasizes that, under the terms of the settlement here, Desktop is owed a larger sum for "dismissal of the above referenced lawsuit and a waiver of all damages" than for "all rights to the Trademarks," that proves little, if anything. To compare those two amounts is to place the bargained-for damages waiver on the wrong side of the ledger: that (typically quite valuable) right is precisely the sort that is fully vindicable on postjudgment appeal. Moreover, even if a high price tag might otherwise be an indicator of a right's "importance" to the benefited party, we cannot ignore that settlement agreement "prices" may be structured for tax, accounting, and business strategy reasons that have nothing to do with their true value to the party.

distinguish it from other arguable rights to be trial free is simply that such a right by agreement does not rise to the level of importance needed for recognition under § 1291. This, indeed, is the bone of the fiercest contention in the case. In disparaging any distinction between an order denying a claim grounded on an explicit constitutional guarantee of immunity from trial and an order at odds with an equally explicit right by private agreement of the parties, Digital stresses that the relative "importance" of these rights, heavily relied upon by the Court of Appeals, is a rogue factor. No decision of this Court, Digital maintains, has held an order unappealable as "unimportant" when it has otherwise met the three *Cohen* requirements, and whether a decided issue is thought "important," it says, should have no bearing on whether it is "final" under § 1291.

If "finality" were as narrow a concept as Digital maintains, however, the Court would have had little reason to go beyond the first factor in *Cohen,* see also *United States* v. *243.22 Acres of Land in Babylon, Suffolk Cty.,* 129 F. 2d 678, 680 (CA2 1942) (Frank, J.) (" 'Final' is not a clear one-purpose word"). And if "importance" were truly aberrational, we would not find it featured so prominently in the *Cohen* opinion itself, which describes the "small class" of immediately appealable prejudgment decisions in terms of rights that are "too important to be denied review" right away, see 337 U. S., at 546. To be sure, Digital may validly question whether "importance" is a factor "beyond" the three *Cohen* conditions or whether it is best considered, as we have sometimes suggested it should be, in connection with the second, "separability," requirement, see, *e. g., Coopers & Lybrand,* 437 U. S., at 468; *Lauro Lines,* 490 U. S., at 498, but neither enquiry could lead to the conclusion that "importance" is itself unimportant. To the contrary, the third *Cohen* question, whether a right is "adequately vindicable" or "effectively reviewable," simply cannot be answered without a judgment about the value of the interests that would be lost

through rigorous application of a final judgment require-
ment. See generally *Van Cauwenberghe, supra,* at 524
("'[T]he substance of the rights entailed, rather than the
advantage to a litigant in winning his claim sooner,'" is dis-
positive) (quoting *MacDonald,* 435 U. S., at 860, n. 7);
*Lauro Lines, supra,* at 502–503 (SCALIA, J., concurring).

·While there is no need to decide here that a privately con-
ferred right could never supply the basis of a collateral order
appeal, but cf. n. 7, *infra* (discussing 9 U. S. C. § 16), there
are surely sound reasons for treating such rights differently
from those originating in the Constitution or statutes.
When a policy is embodied in a constitutional or statutory
provision entitling a party to immunity from suit (a rare
form of protection), there is little room for the judiciary to
gainsay its "importance." Including a provision in a private
contract, by contrast, is barely a prima facie indication that
the right secured is "important" to the benefited party (con-
tracts being replete with boilerplate), let alone that its value
exceeds that of other rights not embodied in agreements
(*e. g.,* the right to be free from a second suit based on a claim
that has already been litigated), or that it qualifies as "impor-
tant" in *Cohen's* sense, as being weightier than the societal
interests advanced by the ordinary operation of final judg-
ment principles. Where statutory and constitutional rights
are concerned, "irretrievabl[e] los[s]" can hardly be trivial,
and the collateral order doctrine might therefore be under-
stood as reflecting the familiar principle of statutory con-
struction that, when possible, courts should construe stat-
utes (here § 1291) to foster harmony with other statutory and
constitutional law, see, *e. g., Ruckelshaus* v. *Monsanto Co.,*
467 U. S. 986, 1018 (1984); *United States ex rel. Milwaukee
Social Democratic Publishing Co.* v. *Burleson,* 255 U. S. 407,
437–438 (1921) (Holmes, J., dissenting). But it is one thing
to say that the policy of § 1291 to avoid piecemeal litigation
should be reconciled with policies embodied in other statutes
or the Constitution, and quite another to suggest that this

public policy may be trumped routinely by the expectations or clever drafting of private parties.[7]

Indeed, we do not take issue with the Tenth Circuit's observation that this case shares more in common with *Lauro Lines* than with *Mitchell*. It is hard to see how, for purposes of § 1291, the supposedly explicit "right not to be tried" element of the settlement agreement in this case differs from the unarguably explicit, privately negotiated "right not to be tried in any forum other than Naples, Italy," in that one. There, no less than here (if Digital reads the settlement agreement correctly), one private party secured from another a promise not to bring suit for reasons that presumably included avoiding the burden, expense, and perhaps embarrassment of a certain class of trials (all but Neapolitan ones or, here, all prompted by Desktop). Cf. *Lauro Lines, supra,* at 501 (asserted right was "surely as effectively vindicable" on final judgment appeal as was the right in *Van Cauwenberghe*).[8] The losing argument in *Lauro Lines* should be a losing argument here.

---

[7] This is not to say that rights originating in a private agreement may never be important enough to warrant immediate appeal. To the contrary, Congress only recently enacted a statute, 102 Stat. 4671, see 9 U. S. C. § 16 (1988 ed., Supp. IV), essentially providing for immediate appeal when a district court rejects a party's assertion that, under the Arbitration Act, a case belongs before a commercial arbitrator and not in court, a measure predicted to have a "sweeping impact," 15B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.17, p. 11 (1992); see generally *id.,* at 7–38. That courts must give full effect to this express congressional judgment that particular policies require that private rights be vindicable immediately, however, by no means suggests that they should now be more ready to make similar judgments for themselves. Congress has expressed no parallel sentiment, to the effect that settlement-agreement rights are, as a matter of federal policy, similarly "too important" to be denied immediate review.

[8] To be fair, the *Lauro Lines* opinion does contain language that, taken alone, might lend succor to petitioner's claim, see 490 U. S., at 501 ("[A]n entitlement to avoid suit is different in kind from an entitlement to be sued only in a particular forum"), but the opinion is not easily read as

Nor are we swayed by Digital's last-ditch effort to come within *Cohen's* sense of "importance" by trying to show that settlement-agreement "immunities" merit first-class treatment for purposes of collateral order appeal, because they advance the public policy favoring voluntary resolution of disputes. It defies common sense to maintain that parties' readiness to settle will be significantly dampened (or the corresponding public interest impaired) by a rule that a district court's decision to let allegedly barred litigation go forward may be challenged as a matter of right only on appeal from a judgment for the plaintiff's favor.

### III

#### A

Even, finally, if the term "importance" were to be exorcised from the *Cohen* analysis altogether, Digital's rights would remain "adequately vindicable" or "effectively reviewable" on final judgment to an extent that other immunities, like the right to be free from a second trial on a criminal charge, are not. As noted already, experience suggests that freedom from trial is rarely the *sine qua non* (or "the essence," see *Van Cauwenberghe*, 486 U. S., at 525) of a negotiated settlement agreement. Avoiding the burden of a trial is no doubt a welcome incident of out-of-court dispute resolution (just as it is for parties who prevail on pretrial motions), but in the run-of-the-mill cases this boon will rarely compare with the "'embarrassment'" and "'anxiety'" averted by a successful double jeopardy claimant, see *Abney*, 431 U. S., at 661–662, or the "'distraction from . . . dut[y],'" *Mitchell*, 472

---

endorsing Digital's claim that a privately negotiated right not to stand trial would be immediately appealable. To the contrary, *Lauro Lines* expressly adopted (at least for criminal appeals) *Midland Asphalt's* limitation that "'[a] right not to be tried in the sense relevant to the *Cohen* exception rests upon an explicit statutory or constitutional guarantee,'" 490 U. S., at 499, quoting 489 U. S., at 801, and stated that the collateral order doctrine operates "[s]imilarly" in civil cases, 490 U. S., at 499.

U. S., at 526, avoided by qualified immunity. Judged within the four corners of the settlement agreement, avoiding trial probably pales in comparison with the benefit of limiting exposure to liability (an interest that is fully vindicable on appeal from final judgment). In the rare case where a party had a special reason, apart from the generic desire to triumph early, for having bargained for an immunity from trial, e. g., an unusual interest in preventing disclosure of particular information, it may seek protection from the district court.

The case for adequate vindication without immediate appeal is strengthened, moreover, by recognizing that a settling party has a source of recompense unknown to trial immunity claimants dependent on public law alone. The essence of Digital's claim here is that Desktop, for valuable consideration, promised not to sue, and we have been given no reason to doubt that Utah law provides for the enforcement of that promise in the same way that other rights arising from private agreements are enforced, through an action for breach of contract. See, e. g., VanDyke v. Mountain Coin Machine Distributors, Inc., 758 P. 2d 962 (Utah App. 1988) (upholding compensatory and punitive damages award against party pursuing suit in the face of settlement agreement); see generally 5A A. Corbin, Corbin on Contracts § 1251 (1964); cf. Yockey v. Horn, 880 F. 2d 945, 947 (CA7 1989) (awarding damages for breach of settlement agreement promise not to "participate in any litigation" against plaintiff); see also Richardson-Merrell, 472 U. S., at 435, and n. 2 (existence of alternative fora for vindicating asserted rights is relevant to appealability under § 1291). And as for Digital's suggestion, see Brief for Petitioner 25, that Desktop is using this proceeding not to remedy a fraud but merely to renege on a promise because it now thinks it should have negotiated a better deal, when a party claims fraud or otherwise seeks recision of a settlement for such improper purposes, its opponent need not rely on a court of appeals for protection. See

Fed. Rule Civ. Proc. 11 (opponent may move for sanction when litigation is motivated by an "improper purpose, such as . . . unnecessary delay or needless increase in the cost of litigation").

## B

In preserving the strict limitations on review as of right under § 1291, our holding should cause no dismay, for the law is not without its safety valve to deal with cases where the contest over a settlement's enforceability raises serious legal questions taking the case out of the ordinary run. While Digital's insistence that the District Court applied a fundamentally wrong legal standard in vacating the dismissal order here may not be considered in deciding appealability under § 1291, see n. 6, *supra*, it plainly is relevant to the availability of the discretionary interlocutory appeal from particular district court orders "involv[ing] a controlling question of law as to which there is substantial ground for difference of opinion," provided for in § 1292(b) of Title 28. Indeed, because we suppose that a defendant's claimed entitlement to a privately negotiated "immunity from suit" could in some instances raise "a controlling question of law . . . [which] . . . may materially advance the ultimate termination of the litigation," the discretionary appeal provision (allowing courts to consider the merits of individual claims) would seem a better vehicle for vindicating serious contractual interpretation claims than the blunt, categorical instrument of § 1291 collateral order appeal. See *Van Cauwenberghe*, 486 U. S., at 529–530 (internal quotation marks omitted); *Coopers & Lybrand*, 437 U. S., at 474–475.[9]

---

[9] We recognize that § 1292 is not a panacea, both because it depends to a degree on the indulgence of the court from which review is sought and because the discretion to decline to hear an appeal is broad, see, *e. g.,* *Coopers & Lybrand*, 437 U. S., at 475 (serious docket congestion may be adequate reason to support denial of certified appeal). On the other hand, we find nothing in the text or purposes of either statute to justify the concern, expressed here by Digital, that a party's request to appeal under

## IV

The words of § 1291 have long been construed to recognize that certain categories of prejudgment decisions exist for which it is both justifiable and necessary to depart from the general rule, that "the whole case and every matter in controversy in it [must be] decided in a single appeal." *McLish* v. *Roff,* 141 U. S. 661, 665–666 (1891). But denying effect to the sort of (asserted) contractual right at issue here is far removed from those immediately appealable decisions involving rights more deeply rooted in public policy, and the rights Digital asserts may, in the main, be vindicated through means less disruptive to the orderly administration of justice than immediate, mandatory appeal. We accordingly hold that a refusal to enforce a settlement agreement claimed to shelter a party from suit altogether does not supply the basis for immediate appeal under § 1291. The judgment of the Court of Appeals is therefore

*Affirmed.*

---

§ 1292(b) might operate, practically or legally, to prejudice its claimed right to immediate appeal under § 1291.