**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CAROL ANN AGSTER, personal
representative of the Estate of
Charles J. Agster, III, deceased,
and as surviving parent of Charles
J. Agster, III; CHARLES J. AGSTER,
JR., surviving parent of Charles J.
Agster, III,
　　　　　*Plaintiffs-Appellees,*

　　　　　　v.

MARICOPA COUNTY, a public entity;
MARICOPA COUNTY CORRECTIONAL
HEALTH SERVICES, a division of
Maricopa County,
　　　　　*Defendants-Appellants,*

　　　　　　and

MARICOPA COUNTY SHERIFF'S
OFFICE, a division of Maricopa
County; JOSEPH M. ARPAIO,
Sheriff; BETTY J. LEWIS; JOHN DOE
LEWIS, husband; BARUCH A.
REUSCH; JANE DOE REUSCH, wife;
LEAH R. COMPTON; JOHN DOE
COMPTON, husband; KRISTINE
KEMPER; JAMES E. CROUCH,
husband, aka John Doe Kemper;
AMANDA S. GARRISON; JOHN DOE
GARRISON, husband; SUSAN E.
FISHER; JOHN DOE FISHER, husband;

No. 04-15466

D.C. No.
CV-02-01686-JAT

OPINION

ERIC NULPH; JANE DOE NULPH,
wife; KATHERINA BROKSCHMIDT;
CHARLES BROKSCHMIDT, husband,
aka John Doe Brokschmidt;
MICHAEL C. WILKINS; KATHLEEN
WILKINS, wife, aka Jane Doe
Wilkins; LAURA SODEMAN; JOHN
DOE SODEMAN, husband,
                              *Defendants.*

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
March 16, 2005—San Francisco, California

Filed August 29, 2005

Before: John T. Noonan, Sidney R. Thomas, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Noonan

**COUNSEL**

Michael D. Wolver, Phoenix, Arizona, for the defendants-appellants.

Sean B. Berberian, Phoenix, Arizona, for the plaintiffs-appellees.

**OPINION**

NOONAN, Circuit Judge:

The parents and the representative of the estate of Charles J. Agster III (Agster) brought this action against individuals and Maricopa County and Maricopa County Sheriff's Office

(collectively, the County) for the death of Agster while in the custody of the County. In this interlocutory appeal, the County challenges the order of the district court compelling production of the mortality review conducted by Correctional Health Services. We hold that we have jurisdiction to consider the County's claim of privilege, and we hold that federal law recognizes no privilege of peer review in the context of a case involving the death of a prisoner.

## FACTS AND PROCEEDINGS

On August 6, 2001, Agster was arrested and taken to the county jail where he was placed in a restraint chair. His respiration decreased, and he developed an irregular heartbeat. Attempts were made to resuscitate him. He was ultimately transported to a hospital where he was placed on life support. On August 9, 2001, he was pronounced dead.

Correctional Health Services, whose employees had given medical care to Agster at the jail, was obligated to undertake a mortality review by its own policies and by Standard J-10 of the National Commission on Correctional Health Care Standards for Health Services in Jails. The review, designated as a "Critical Incident Report" was begun August 7, 2001 and finished November 8, 2001. The review was intended to be, and was, kept confidential.

On August 6, 2002, the plaintiffs brought this action in Arizona state court. On August 29, 2002, the County removed the action to the federal district court. Prior to trial, the plaintiffs sought discovery of the mortality review. The motion was opposed by the County evoking Arizona law to maintain its confidentiality. On January 30, 2002, the district court ruled "that no federal peer review has been adopted in the Ninth Circuit." The court overruled the claim of privilege and ordered the production of the document. The court declined to certify the order for interlocutory appeal.

The County appeals.

## ANALYSIS

*Jurisdiction.* Our jurisdiction is of final judgments, 28 U.S.C. § 1291, with a gloss admitting appeal of "a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (internal quotations and citations omitted). Such decisions must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468 (1978). The present appeal meets these stringent conditions.

Our circuit has not resolved the general question of "whether a discovery order disposing of an asserted claim of privilege could be independently appealed under the collateral order doctrine of *Cohen*[.]" *United States v. Fernandez*, 231 F.3d 1240, 1245 n. 4 (9th Cir. 2000). We need not do so here; it suffices to conclude that under the specific circumstances of this case, including the nature and importance of the privilege at issue, jurisdiction lies.

**[1]** The issue of the production of the mortality review is conclusively resolved, and the statutory grant of the claimed privilege by Arizona and other states attests to its importance. The trickier question, as we recognized in a related context in *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003) (en banc), is whether the issue at stake will be effectively unreviewable after a final judgment. As we stated in *Bittaker*, the district court's order regarding the privilege is "reviewable on appeal from the final judgment, no matter who wins below on the merits," and "at that time we will know much more about the practical effect of the order, if any." *Id.* at 717. Further, "if [plaintiffs are] unsuccessful in any of [their] claims, and

no retrial is necessary, the order would become irrelevant for all practical purposes." *Id.* A similar result would also follow if, upon appeal after a final judgment, we assumed the impropriety of the discovery order but found the error harmless.

**[2]** However, we conclude, as we did in *Bittaker*, that the decision is appealable now "because significant strategic decisions turn on its validity," and "review after final judgment may therefore come too late." *Id.* at 717-718. Once "[t]he cat is already out of the bag," it may not be possible to get it back in. *See id. (quoting In re Ford Motor Co.*, 110 F.3d 954, 963 (3d Cir. 1997)). Even if a new trial were ordered at which the material found to be privileged was not admissible, it might be impossible to undo the effects of the disclosure with regard to the information in plaintiffs' hands and its effect on their trial strategy. Jurisdiction exists to decide the dispute now.

**[2]** *The Privilege*. Arizona recognizes the privilege attached to peer review of "the professional practices within the hospital or center for the purposes of reducing morbidity and mortality and for the improvement of the care of patients provided in the institution." Ariz. Rev. Stat. §§ 36-445, 36-445.01. But we are not bound by Arizona law, and the defendants deliberately chose the federal forum to litigate this suit.

**[4]** No case in this circuit has recognized the privilege. But we can create a new privilege as a matter of federal common law. A "public good transcending the normally predominant principle" disfavoring testimonial privileges may justify such creation. *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (internal quotations and citation omitted). The law of privilege is not frozen. The process of recognizing one is "evolutionary." *Id.* (citation omitted). It is earnestly urged that the evolution has reached the point here that the protection of confidentiality in peer review in order to assure candor in the review has been recognized by most states. *Weekoty v. United States*, 30 F. Supp. 2d 1343, 1348 (D. N.M. 1998); Note, *The Medical*

*Review Committee Privilege: A Jurisdictional Survey*, 67 N.C.L. Rev. 179 (1988).

**[5]** We are constrained by two considerations, one general and the other particular to this case. We must be "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *Univ. of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990). The Health Care Quality Improvement Act of 1986 granted immunity to participants in medical peer reviews, but did not privilege the report resulting from the process. *See* 42 U.S.C. §§ 11101-11152. Congress amended the act in 1987 to state that "nothing in this subchapter shall be construed as changing the liabilities or immunities under law or preempting or overriding any State law." Pub. L. No. 100-177, § 402(c). As Congress has twice had occasion and opportunity to consider the privilege and not granted it either explicitly or by implication, there exists a general objection to our doing so.

**[6]** The particular objection is that the privilege is sought to protect a report bearing on the death of a prisoner. Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered. In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided. Given the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege. Accordingly, we are unwilling to create the privilege in this case.

**[7]** *The State Law Claims*. Where there are federal question claims and pendent state law claims present, the federal law of privilege applies. Fed. R. Evid. 501 advisory committee

note; s*ee also Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3rd Cir. 1982).

AFFIRMED.