NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3741
_____

L.Y., on behalf of J.Y., and
ELYSIAN CHARTER SCHOOL OF HOBOKEN,

Appellants

v.

BAYONNE BOARD OF EDUCATION
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cv-04422)
District Judge:  Honorable Stanley R. Chesler
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 16, 2010

Before:  FISHER and COWEN, *Circuit Judges*, and PRATTER,* *District Judge*.

(Filed: June 10, 2010 )
_____

OPINION OF THE COURT
_____

*Honorable Gene E.K. Pratter, United States District Judge for the Eastern District
of Pennsylvania, sitting by designation.

PRATTER, *District Judge.*

L.Y., on behalf of her son, J.Y., and Elysian Charter School of Hoboken appeal from the Order of the United States District Court for the District of New Jersey denying their motion for an injunction to entitle J.Y. to attend a private, out-of-district school with educational programs for his learning disabilities during the pendency of a dispute with the Bayonne Board of Education over J.Y.'s 2009-2010 Individualized Education Program ("IEP"). We will affirm.

I.

As we write only for the parties, who are familiar with the factual context and procedural history of the case, we will set forth only those facts necessary to our analysis.

J.Y. is a 13-year-old boy living in Bayonne, New Jersey. In 2002, he began attending Elysian Charter School of Hoboken ("Elysian"), located in Hoboken, New Jersey. Elysian is a charter school financed from local tax levies and state and federal aid.

In 2002, Elysian's IEP team performed an evaluation of J.Y. and classified him as having learning disabilities requiring special instruction. At that time, pursuant to the Individuals with Disabilities Education Act ("IDEA") and New Jersey state law, Elysian developed an IEP for J.Y. that included special reading and language instruction. The IEP Team at Elysian developed an IEP for J.Y. each year thereafter.

In 2009, Elysian's IEP Team determined that J.Y. should be placed at the Community School, a private school for disabled children located outside of the Bayonne

2

School District. The IEP Team included this placement in J.Y.'s IEP for the 2009-2010 academic year (the "June 9, 2009 IEP"), and J.Y.'s mother, L.Y., agreed in writing to this placement on June 9, 2009. The IEP indicated that upon obtaining L.Y.'s signature, it would be "implemented," with the Community School placement beginning in September 2009.

The Bayonne School District ("Bayonne") did not participate in the creation of the June 9, 2009 IEP. However, as required by New Jersey law, Elysian informed Bayonne about the IEP. Exercising its statutory right to contest the Community School placement because it is responsible for paying the requisite tuition, Bayonne initiated a due process hearing with the Department of Education, claiming that an in-district school placement would provide J.Y. with a free and appropriate public education in the least restrictive environment among non-disabled children. L.Y. cross-petitioned on J.Y.'s behalf for a "stay-put" order placing J.Y. at the Community School during the pendency of the administrative proceedings. Her request was denied.

L.Y. then filed a complaint in federal court, alleging violations of the IDEA. She also requested an injunction requiring J.Y. to be placed at the Community School and requiring Bayonne to pay his tuition. The District Court determined that J.Y. should remain at Elysian during the pendency of the dispute, and denied L.Y.'s request for a preliminary injunction.

3

Specifically, the District Court rejected L.Y.'s argument that J.Y.'s "current education placement" under the IDEA was the Community School. The District Court noted that at the time Bayonne initiated proceedings to contest the adequacy of the June 9, 2009 IEP, J.Y. was not receiving instruction under that IEP because he was not yet attending the Community School, and the terms of the IEP did not call for that placement to begin until September 2009. The District Court also rejected Appellants' argument that the IDEA's "stay-put" provision empowers a school and a child's parents to agree on the appropriate educational placement while an IEP dispute is pending because interpreting the "stay-put" provision in that way would negate Bayonne's statutory right to challenge the placement under New Jersey law. Finally, the District Court found that L.Y. was not entitled to a preliminary injunction.

L.Y. now appeals.

## II.

The District Court exercised jurisdiction under 20 U.S.C. § 1415(i)(3) and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review of whether the District Court applied the correct legal standards under the IDEA in determining J.Y.'s then current educational placement. L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006); Drinker by Drinker v. Colonial School Dist., 78 F.3d 859, 865 (3d Cir. 1996) (holding that the question of what constitutes a student's "current educational placement" is one of law). We review the

4

denial of a motion for a preliminary injunction for an "abuse of discretion, a clear error of law, or a clear mistake on the facts." Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999) (internal quotations and citation omitted).

III.

The IDEA requires that a state receiving federal education funding provide a "free appropriate public education" ("FAPE") to disabled children. 20 U.S.C. § 1412(a)(1). School districts provide a FAPE by designing and administering a program of individualized instruction that is set forth in an IEP. 20 U.S.C. § 1414(d). The IEP must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the child's intellectual potential. Shore Reg'l High Sch. Bd. of Ed. v. P.S., 381 F.3d 194, 198 (3d Cir. 2004) (internal quotations and citation omitted).

The IDEA frequently has been described as a model of cooperative federalism. Schaffer v. Weast, 546 U.S. 49, 52 (2005). It "leaves to the States the primary responsibility for developing and executing educational programs for handicapped children, [but] imposes significant requirements to be followed in the discharge of that responsibility." Bd. of Educ. v. Rowley, 458 U.S. 176, 183 (1982). To that end, the IDEA requires that each state receiving federal funds ensure that state rules, regulations, and policies conform to the purposes of the IDEA. 20 U.S.C. § 1407.

Under New Jersey law, when a disabled student attends a charter school, that school is responsible for providing special education services to that student, including

5

working with a child's parents to develop an IEP. N.J. Stat. Ann. § 18A:36A-11(b). The school district where the child resides, however, bears fiscal responsibility for a child's special education services when the IEP requires placement at a private school. Id. For that reason, New Jersey law provides that:

> Within 15 days of the signing of the individualized education plan, a charter school shall provide notice to the resident district of any individualized education plan which results in a private day or residential placement. The resident district may challenge the placement within 30 days in accordance with the procedures established by law.

Id.

A.    J.Y.'s "Stay-Put" Placement

The IDEA states that "[d]uring the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then current educational placement of such child." 20 U.S.C. § 1415(j). This section of the IDEA is referred to as the "stay-put" provision. The stay-put provision operates as an automatic preliminary injunction. Drinker, 78 F.3d at 864.

The IDEA does not define "current educational placement." We have held that the current educational placement "refers to the operative placement actually functioning at the time the dispute first arises. If an IEP has been implemented, then that program's placement will be the one subject to the stay put provision." Id. at 867 (quoting Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 625-26 (6th Cir.1990)). If no IEP is in effect

6

when the dispute arises, the stay-put placement is that under which the child is actually receiving instruction at the time the dispute arises.  Id.

Appellants here argue that the only valid, functioning IEP in place at the time the dispute arose was the June 9, 2009 IEP calling for J.Y.'s placement at the Community School.  Therefore, Appellants argue that the Community School is J.Y.'s stay-put placement for the pendency of the underlying proceedings.

While determining a child's current educational placement at the time a dispute begins may appear straightforward, in this case the determination is complicated by the fact that J.Y.'s 2008-2009 school year ended on June 16, 2009.  When Bayonne initiated its challenge to the Community School placement on July 8, 2009, J.Y. was not actively receiving instruction under either the most recent un-challenged IEP for the just completed 2008-2009 school year, or the disputed upcoming June 9, 2009 IEP.

Indeed, the June 9, 2009 IEP had not been implemented in any true sense.  The June 9, 2009 IEP called for J.Y.'s placement at the Community School to begin in September 2009.  Appellants cite to a New Jersey regulation providing that an IEP *may* be implemented sooner where, as here, a parent agrees in writing.  See N.J. Admin. Code § 6A:14-2.3(h)(2).  However, this regulation, which does not *require* that an IEP be implemented when a parent agrees in writing, must be read in conjunction with the aforementioned New Jersey statute permitting resident school districts to object to private placement determinations made by charter schools.  If an IEP were considered

7

"implemented" as soon as it was signed by the student's parent, the school district's right to object in advance would be illusory. We decline to adopt any such interpretation of the New Jersey laws at issue here, as we generally adhere to the principle that statutes relating to the same subject matter should be construed harmoniously. See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 879 (1994) ("[C]ourts should construe statutes . . . to foster harmony with other statutory and constitutional law."); Hernandez v. Kalinowski, 146 F.3d 196, 200 (3d Cir. 1998) (noting that when interpreting a statute, courts will look to statutes on the same subject and the object and policy of the law).

Neither the plain language of the IDEA, New Jersey laws implementing the IDEA, nor our prior case law expressly cover the situation presented here. To endorse the plain meaning of the statutory language, we can look to the purpose of the IDEA's stay-put provision if guidance is needed in interpreting its meaning and application here. Alcoa Inc. v. United States, 509 F.3d 173, 180 (3d Cir. 2007) ("To resolve this ambiguity in the language of the statute, we will turn to the congressional intent revealed in the history and purpose of the statutory scheme.")

The stay-put provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current education placement until the dispute with regard to their placement is ultimately resolved." Drinker, 78 F.3d at 864. We have consistently stated that the purpose of the stay-put provision is the preservation of the status quo during disputes about a child's

8

educational placement. Pardini, 420 F.3d at 190 ("In Drinker, we stressed the importance of maintaining the status quo when identifying 'the then current educational placement' for purposes of the stay-put rule."); J.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 272 (3d Cir. 2002) ("Stay-put orders are designed to maintain the status quo during the course of proceedings."); Drinker, 78 F.3d at 865 ("[T]he purpose of the 'stay put' is to preserve the status quo of the child's functioning placement and program." (internal quotations and citation omitted)).

Because J.Y. was on summer break when this dispute arose, strictly speaking neither Elysian nor the Community School actually represented J.Y.'s stay-put placement. Nevertheless, we hold that having J.Y. remain at Elysian while the dispute with regard to his placement is resolved hues closest to the plain meaning of the statutes as well as the congressional intent of maintaining the status quo, inasmuch as J.Y. never attended the Community School and never received instruction under the June 9, 2009 IEP. Placing him at the Community School at this stage would not be consistent with the purpose of the stay-put provision to maintain the status quo until the conclusion of the due process hearings, during which J.Y.'s ultimate appropriate placement will be determined.

Appellants argue that even if the Community School is not considered J.Y.'s then-current placement, the stay-put provision empowers a school and a child's parents to agree on the appropriate placement while an IEP dispute is pending. Appellants cite to a portion of Section 1415(j) of IDEA, which states that a child must stay in the "current

9

educational placement" unless the state or Local Education Agency ("LEA") and parents agree to a different placement. 20 U.S.C. § 1415(j). Appellants argue that Elysian, and not Bayonne, is the relevant LEA here because it is the entity with administrative control over, and responsibility for, providing special education and related services to its disabled students. In response, Bayonne argues that under New Jersey regulations, charter schools are considered LEAs only for the limited purpose of applying for federal funds. See N.J. Admin. Code § 6A:11-4.1 ("A charter school shall be a local education agency only for the purpose of applying for Federal entitlement and discretionary funds.").

Regardless of which entity is considered the LEA, Elysian and L.Y. cannot dictate placement of J.Y. at the Community School over Bayonne's objections. IDEA's stay-put provision should be read in harmony with N.J. Stat. Ann. § 18A:36A-11(b), which permits a school district to object to a placement before a child is moved, especially given the IDEA's goal of cooperative federalism. See FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (noting that "it is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," and that "[a] court must therefore interpret the statute as a symmetrical and coherent regulatory scheme . . . and fit, if possible, all parts into an harmonious whole . . ." (internal quotations and citations omitted)). Because Section 1415(j) of IDEA does not anticipate a situation in which both a charter school and

the school district have an interest in a child's education placement, we do not construe Section 1415(j) as conflicting with the application of N.J. Stat. Ann. § 18A:36A-11(b) to this case.

B.    Appellants' Motion for a Preliminary Injunction

In order for a party's request for a preliminary injunction to be granted, the party must show (1) a reasonable probability of success on the merits, (2) that it will be irreparably harmed if the injunction is not granted, (3) that the non-moving party will not suffer greater harm if the injunction is granted, and (4) that the public interest at stake favors the granting of an injunction. Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Twp. Sch. Dist., 386 F.3d 514, 524 (3d Cir. 2004). We have also made clear that if the moving party fails to demonstrate either a likelihood of success or irreparable harm, an injunction should not be granted. In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982).

The underlying issue in this case is whether the June 9, 2009 IEP will provide J.Y. with a FAPE in the least restrictive environment. The District Court held that resolving this issue is a fact-intensive inquiry, and that it could not conclude that L.Y. had demonstrated a likelihood of success on the merits. On appeal, Appellants focus their efforts on demonstrating irreparable injury, devoting scant attention to the likelihood of success prong. Instead, they emphasize that L.Y. should not remain at the Eylsian school during the pendency of this dispute. For its part, Bayonne contends that its proffered

11

placement of J.Y. at another school in the Bayonne school district will provide J.Y. with a placement in the least restrictive environment alongside non-disabled students. Bayonne contends that the Community School, in contrast, cannot provide a FAPE to J.Y. because it is a school comprised entirely of students classified with similar learning disabilities.

Based on this record, we cannot say that the District Court abused its discretion in denying injunctive relief because Appellants failed to carry their burden of proving a reasonable probability of success on the merits. Because this failure is a sufficient basis for the denial of a preliminary injunction, it is unnecessary for us to reach their remaining arguments. Id.

IV.

For the foregoing reasons, the District Court's Order denying Appellants' request for injunctive relief will be affirmed.