**Ivan FICKEN, Appellant**

v.

**Aida ALVAREZ, Administrator, Small Business Administration, Appellee**

No. 97–5190.

United States Court of Appeals, District of Columbia Circuit.

Argued May 14, 1998.

Decided July 10, 1998.

---

Erik S. Jaffe, appointed by the court, argued the cause as amicus curiae on behalf of appellant.

Ivan Ficken, appearing pro se, argued the cause and filed the briefs.

Stephen R. Martin, II, Special Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: WALD, WILLIAMS, and TATEL, Circuit Judges.

TATEL, Circuit Judge:

A *pro se* Title VII plaintiff seeks review of a district court's denial of his motion for appointment of counsel pursuant to 42 U.S.C. § 2000e–5(f)(1) (1994). Because this non-final order does not qualify as a collateral order within the meaning of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), we lack jurisdiction to hear this appeal.

I

An attorney, appellant Ivan Ficken worked in various capacities for the Small Business Administration. Ficken claims that after he provided statements to an SBA Equal Employment Opportunity investigator in support of a coworker's discrimination case and filed an age discrimination claim of his own, the SBA retaliated against him, eventually terminating him from the agency.

Having exhausted his administrative remedies, Ficken filed a Title VII suit against the SBA and moved to proceed *in forma pauperis*. He also moved for appointment of counsel under section 2000e–5(f)(1), which states that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant." 42 U.S.C. § 2000e–5(f)(1). Although the district court granted Ficken IFP status, it denied appointment of counsel, applying the test set forth in *Poindexter v. FBI*, 737 F.2d 1173 (D.C.Cir.1984), which directs district courts to consider "(1) the ability of the plaintiff to afford an attor-

ney; (2) the merits of the plaintiff's case; (3) the efforts of the plaintiff to secure counsel; and (4) the capacity of the plaintiff to present the case adequately without aid of counsel," *id.* at 1185. Acknowledging that Ficken "may well not be able to afford an attorney," and lacked experience with Title VII matters, the court concluded that it could not "justify squandering its limited resources of attorneys willing to take pro bono appointments."

Ficken moved for reconsideration, which a different district court, also applying the *Poindexter* factors, denied. The court explained that Ficken's abilities as an attorney weighed heavily against appointing counsel, and that "[t]o date, [Ficken] has ably presented his case to the Court." The district court also noted that "[a]t this early stage of the litigation, the pleadings do not permit the Court to find that the merits of [Ficken's] case are so compelling that appointment of counsel is necessary to ensure the vindication of important federal civil rights."

Without waiting for any further proceedings in the district court, Ficken appealed. We appointed *amicus curiae* on his behalf.

## II

■■■ This court has jurisdiction of appeals only from "final decisions of the district courts," 28 U.S.C. § 1291 (1994)—decisions that "end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). This jurisdictional limitation, however, is not absolute. In *Cohen v. Beneficial Industrial Loan Corp.,* the Supreme Court recognized a "small class" of decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen,* 337 U.S. at 546, 69 S.Ct. 1221. In order to qualify for immediate appeal under *Cohen*'s collateral order doctrine, a district court order must meet three requirements: "conclusively determine the disputed question, resolve an important issue completely separate

from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *see, e.g., United States v. Durenberger,* 48 F.3d 1239, 1241–42 (D.C.Cir.1995) (citing standard).

This court has never decided whether orders denying appointment of counsel under section 2000e–5(f)(1) qualify as appealable collateral orders. The question has divided our sister circuits. The Third, Fifth, Eighth, and Ninth Circuits allow interlocutory appeal of such orders. See *Spanos v. Penn Cent. Transp. Co.,* 470 F.2d 806, 807 n. 3 (3d Cir.1972); *Caston v. Sears, Roebuck & Co.,* 556 F.2d 1305, 1308 (5th Cir.1977); *Slaughter v. City of Maplewood,* 731 F.2d 587, 588–89 (8th Cir.1984); *Bradshaw v. Zoological Soc'y,* 662 F.2d 1301, 1305–18 (9th Cir.1981). The Sixth, Seventh, and Eleventh Circuits read the *Cohen/Coopers & Lybrand* factors to reach the opposite conclusion. *See Henry v. City of Detroit Manpower Dept.,* 763 F.2d 757, 761–64 (6th Cir.1985) (en banc); *Randle v. Victor Welding Supply Co.,* 664 F.2d 1064, 1065–67 (7th Cir.1981) (per curiam); *Hodges v. Department of Corrections,* 895 F.2d 1360, 1361–62 (11th Cir.1990) (per curiam). Circuits also disagree about the closely related question of the immediate appealability of orders denying appointment of counsel under the general civil appointment statute, 28 U.S.C.A. § 1915(e)(1) (West Supp.1998) ("The court may request an attorney to represent any person unable to afford counsel."); although a heavy majority find no appellate jurisdiction. *See Marler v. Adonis Health Prods.,* 997 F.2d 1141, 1142 (5th Cir.1993) (citing cases).

■■■ Reviewing this extensive debate, we join those circuits that hold that orders denying appointment of counsel under section 2000e–5(f)(1) fall outside *Cohen*'s collateral order doctrine. Most important, because the *Poindexter* factors as applied to a particular case often change as litigation progresses, denials of motions for appointment of counsel rarely, as a practical matter, "conclusively determine the disputed question." *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. 2454. Consider, for example, a plaintiff's "capacity

... to present the case adequately without aid of counsel." *Poindexter*, 737 F.2d at 1185. Plaintiffs who file perfectly adequate complaints and respond well to motions to dismiss might be entirely unable to handle discovery or respond to motions for summary judgment. Even *pro se* plaintiffs with sufficient skills to survive summary judgment are unlikely to be able to try a case.

The other *Poindexter* factors can likewise change during litigation. With respect to the merits of the plaintiff's case (*Poindexter*'s second factor), or at least the district court's perception of the merits, complaints that appear weak could strengthen as discovery progresses or plaintiffs respond to dispositive motions. Plaintiffs who have adequate financial resources (*Poindexter*'s first factor) to hire counsel for relatively simple cases might be unable to hire more experienced counsel should a case blossom in complexity later in the litigation. Plaintiffs making no efforts to secure counsel (*Poindexter*'s third factor) before filing the complaint might begin contacting lawyers or referral organizations in response to dispositive motions or as trial nears.

Because of the evolutionary nature of the *Poindexter* factors, district judges often re-evaluate the need for appointed counsel at various stages of the proceedings. Although a court may well appoint counsel at the outset of a case, it might also decide to postpone the decision—for example, until after resolution of dispositive motions—in order to give itself both more time and more information to evaluate the plaintiff's capabilities and the merits of the case. Here, for example, the district court emphasized that its decision rested on its assessment "at this point in the litigation," evaluating the merits only "[a]t this early stage" and Ficken's capabilities "[t]o date." District judges may also believe that given some additional time, *pro se* plaintiffs might obtain counsel on their own. As the Eleventh Circuit observed in holding orders denying appointment of counsel unreviewable until the close of litigation, such orders "usually indicate[ ] 'nothing more than that the district court is not completely confident of the propriety of [court appointed counsel] at that time.'" *Holt v. Ford*, 862

F.2d 850, 852 (11th Cir.1989) (en banc) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 278, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988)); *see also Miller v. Simmons*, 814 F.2d 962, 965 (4th Cir.1987) ("[S]uch [a] preliminary order does not foreclose future consideration by the trial court of the appropriateness of appointment of counsel as facts and circumstances dictate.").

Other factors contribute to the tentative nature of orders denying appointment of counsel. Because district judges are reluctant to "squander[ ] [their] limited resources of attorneys willing to take pro bono appointments," they often postpone the appointment decision until after dispositive motions as a means of weeding out frivolous or unmeritorious cases. The timing of the appointment may also reflect the district court's assessment of the adequacy of the record for purposes of its own decisionmaking. A district court that initially denies a motion to appoint counsel because it feels comfortable resolving a motion to dismiss on the basis of a record produced by a *pro se* plaintiff may later appoint counsel to ensure the development of a record adequate for summary judgment or trial.

Although our conclusion that orders denying appointment of counsel under section 2000e–5(f)(1) fail *Cohen*'s first test requires dismissal of this appeal, see *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868–69, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (finding order not immediately appealable because not *all Cohen* factors met); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 376, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (same); *see also D & H Marketers, Inc. v. Freedom Oil & Gas, Inc.*, 744 F.2d 1443, 1446 (10th Cir.1984) (noting that orders must meet all prongs of the *Cohen* test in order to be immediately appealable), we also doubt whether such orders meet *Cohen*'s third requirement—that the order in question be "effectively" unreviewable on appeal at the conclusion of litigation, *Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. 2454. To be sure, "[a] pro se litigant denied appointed counsel is subject to numerous errors, many of which cannot be cured post hoc, and seems far more likely to abandon the case entirely

or accept a deficient settlement." Br. of *Amicus* at 15. The Supreme Court, however, has recognized that such problems flow inevitably from the general rule prohibiting interlocutory appeals. As the Court said in rejecting immediate appeal of an order vacating a dismissal based on a settlement agreement:

> A fully litigated case can no more be untried than the law's proverbial bell can be unrung, and almost every pretrial or trial order might be called "effectively unreviewable" in the sense that relief from error can never extend to rewriting history. Thus, erroneous evidentiary rulings, grants or denials of attorney disqualification and restrictions on the rights of intervening parties may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment, and other errors, real enough, will not seem serious enough to warrant reversal at all, when reviewed after a long trial on the merits. In still other cases, an erroneous district court decision will, as a practical matter, sound the "death knell" for many plaintiffs' claims that might have gone forward if prompt error correction had been an option. But if immediate appellate review were available every such time, Congress's final decision rule would end up a pretty puny one....

*Digital Equip. Corp.*, 511 U.S. at 872, 114 S.Ct. 1992 (citations omitted). Orders denying appointment of counsel present Title VII plaintiffs with similar problems: they may "burden [them] in ways that are only imperfectly reparable by appellate reversal of a final district court judgment," *id.*; and such orders may "not seem serious enough to warrant reversal at all, when reviewed after a long trial on the merits," *id.* But as our decision in *Poindexter* demonstrates, denial of interlocutory appeal does not " 'render impossible any review whatsoever.' " *Firestone*, 449 U.S. at 376, 101 S.Ct. 669 (quoting *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971)); *see also Wilborn v. Escalderon*, 789 F.2d 1328, 1330–31 (9th Cir.1986) (on appeal after grant of summary judgment, court found no abuse of discretion in denial of appointment of counsel

earlier in litigation); *cf. Flanagan v. United States*, 465 U.S. 259, 268, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (noting that "post-conviction review [of a disqualification order] is concededly effective to the extent that petitioners' asserted right is like the Sixth Amendment rights violated when a trial court denies appointment altogether").

It is also true that orders denying appointment of counsel may, as *Digital Equipment* put it, "sound the 'death knell' for many plaintiffs' claims that might have gone forward if prompt error correction had been an option." *Digital Equip. Corp.*, 511 U.S. at 872, 114 S.Ct. 1992. But whether some *pro se* plaintiffs—indeed, even this plaintiff—might choose not to pursue their cases without appointed counsel is not the controlling question under *Cohen.* As the Supreme Court made clear in *Digital Equipment,* whether an order qualifies as a collateral order under *Cohen* "is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a 'particular injustic[e]' averted, by a prompt appellate court decision." *Id.* at 868, 114 S.Ct. 1992 (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988)) (citation omitted). The Court's decision in *Roberts v. United States District Court*, 339 U.S. 844, 70 S.Ct. 954, 94 L.Ed. 1326 (1950) (per curiam), on which *amicus* relies, illustrates just this point. In *Roberts*, the Court held that orders denying *in forma pauperis* status are immediately appealable. *Id.* at 845, 70 S.Ct. 954. Unlike orders denying IFP status, which effectively close the courthouse door to indigents, orders denying appointment of counsel do not prevent *pro se* plaintiffs from proceeding. While some *pro se* Title VII plaintiffs denied appointed counsel may abandon their claims for lack of assistance, orders denying appointment of counsel present no absolute bar to proceeding. Many *pro se* plaintiffs respond to dispositive motions, and some even successfully litigate at trial and on appeal. *See, e.g., Barbour v. Merrill*, 48 F.3d 1270 (D.C.Cir. 1995) (*pro se* plaintiff prevailing).

In reality, moreover, postponing review of denials of counsel risks fewer and less seri-

ous burdens than Ficken and *amicus* fear. Most Title VII cases terminate at the dispositive motion stage. *See* ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, JUDICIAL BUSINESS OF THE UNITED STATES COURTS 1997, at 153 (1998) (providing data indicating that a minority of Title VII cases proceed to trial). At that point, the problems inherent in appellate review of denials of appointment of counsel are considerably less formidable. When reviewing orders dismissing complaints or granting summary judgment, appellate courts will have less difficulty focusing on the district court's application of the *Poindexter* factors and isolating any prejudice resulting from the denial of counsel. They will also have less difficulty fashioning a remedy. Instead of having to retry a case, the appeals court simply sets aside the order granting the dispositive motion and remands with directions to appoint counsel.

### III

While we understand the concerns that led four circuits to hold that motions denying appointment of counsel are immediately appealable, particularly the unique nature of section 2000e–5(f)(1) and the challenges facing *pro se* plaintiffs seeking to vindicate important federal rights under Title VII, we read *Cohen* to require appellate courts to postpone review until final judgment. Not only would a contrary ruling—allowing interlocutory appeals of orders denying appointment of counsel, and therefore also repeated appeals as district judges deny successive motions—delay expeditious resolution of Title VII cases, but given the fact-intensive and interrelated nature of the *Poindexter* factors, we think leaving appointment of counsel to the continued and uninterrupted evaluation of district judges actually promotes the goals of section 2000e–5(f)(1). It is the district courts that occupy the best position to evaluate and monitor plaintiffs' skills and the strength and complexity of plaintiffs' claims, as well as to determine whether and when to appoint counsel. Indeed, district courts have their own strong incentives for ensuring adequate representation for *pro se* plaintiffs. Except in those few cases where *pro se* plaintiffs are unusually skilled, we cannot imagine why any district court would want to try a complex Title VII case without competent counsel.

Equally important, we expect district courts sitting in this circuit have little difficulty finding competent counsel to appoint in Title VII cases raising promising claims. Many organizations, firms, and lawyers in the District of Columbia provide *pro bono* counsel. We have every confidence that they will continue to respond to requests for help from our colleagues on the district court.

Because we lack jurisdiction to review the district court's denial of Ficken's motion for appointment of counsel, we dismiss this appeal.

*So ordered.*