NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROSETTA-WIRELESS CORPORATION,**
*Appellant*

**v.**

**SAMSUNG ELECTRONIC CO., LTD, SAMSUNG ELECTRONICS AMERICA, INC., APPLE INC,**
*Appellees*

---

2018-1322, 2018-1324

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2016-00616, IPR2016-00622.

---

Decided: April 19, 2019

---

BENJAMIN JEFFREY AARON SAUTER, Kobre & Kim LLP, New York, NY, argued for appellant. Also represented by DANIEL AMON ZAHEER, MICHAEL NG, San Francisco, CA.

MEGAN FREELAND RAYMOND, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC, argued for appellees Samsung Electronic Co., Ltd, Samsung Electronics America, Inc. Also represented by JON STEVEN BAUGHMAN.

BRIAN E. FERGUSON, Weil, Gotshal & Manges LLP, Washington, DC, argued for appellee Apple Inc.

————————————

Before O'MALLEY, REYNA, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

Rosetta-Wireless Corporation (Rosetta) appeals the final written decision of the Patent Trial and Appeal Board (Board) in an *inter partes* review (IPR) proceeding concluding that Samsung Electronic Co., Ltd, Samsung Electronics America, Inc., Apple Inc. (collectively, Appellees) demonstrated by a preponderance of the evidence that certain claims of U.S. Patent No. 7,149,511 (the '511 patent) are unpatentable as obvious in view of U.S. Patent No. 5,864,853 (Kimura), and on separate grounds, in view of a textbook called "Windows CE Developer's Handbook," written in 1999 by Terence A. Goggin (Goggin). Because we agree with the Board's claim constructions and conclude that the Board's findings are supported by substantial evidence, we affirm.

## BACKGROUND

### A. The '511 Patent

The '511 patent, titled "Wireless Intelligent Personal Server," was filed in 2000 and issued in 2006. '511 patent. The patent explains that typically, in an office environment, electronic files are stored on an office-wide server or on individual computers located in the office space. *Id.* at col. 1, ll. 17–20. When users need to access the files, the personal computers run applications to retrieve them and display them to the users. *Id.* at col. 1, ll. 22–25. But when users work outside the office, it is more difficult to gain access to the most up-to-date versions of the files because they are outside the office network. *See id.* at col. 1, ll. 29–33. At the time the patent was filed, users resolved this concern by dialing into the wireline network or accessing

the file over the wireless network, but there were multiple disadvantages to these solutions. *Id.* at col. 1, l. 43 – col. 2, l. 48. For example, most wireless approaches used a "pull" methodology where the user requests the information and the device then responds. These approaches had high latency, were high cost, and were too device-specific. *Id.*

The '511 patent aims to resolve the above-described problems with a "wireless intelligent personal server" (WIPS) that receives data over a wireless communications channel and automatically processes it so as to maintain a copy of at least one electronic file stored on a source computer for a user working remotely to access the file in the future. *Id.* at col. 1, ll. 8–12. Claim 1 is representative:

> 1. A wireless intelligent personal network server, comprising:
>
> a radio frequency (RF) receiver for receiving downstream data transmitted over a first wireless communications channel;
>
> a memory;
>
> a central processing unit (CPU);
>
> a set of embedded machine language instructions within said personal network server, said set of embedded machine language instructions being executable by said CPU for processing said downstream data to provide at least one electronic file in said memory; and
>
> a first interface for allowing an external display device to selectively access said at least one electronic file.

*Id.* at col. 13, ll. 31–44.

## B. Kimura

Kimura discloses a portable personal data device (PPDD). Kimura explains that typical file systems cannot

provide the flexibility users would like to access files in multiple environments, such as work and home. Kimura, col. 1, l. 13 – col. 2, l. 8. Kimura addresses this concern by providing each user with his or her own portable file system, or PPDD, that the user carries. *Id.* at col. 6, l. 65 – col. 7, l. 6. The user places the PPDD next to a computer, and the devices communicate with each other via radio to transfer the files. *Id.* at col. 7, ll. 2–13.

## C. Goggin

Goggin is a textbook for software developers about Windows CE, which is a "stripped down" version of the Windows 98/NT operating system specifically engineered for portable devices including handheld personal computers. Goggin at 30. The portable devices can be connected wirelessly using LAN and Ethernet cards. *Id.* at 63. Goggin describes "a special set of functions that allows developers . . . to access any files, databases, or system information on a [Windows] CE device" — called a Remote Application Programming Interface (RAPI) — which includes functions to read or write files onto a Windows CE device. *Id.* at 308. Goggin explains that "RAPI[, implemented on the wireless-connected portable device,] helps extend the CE application into the Desktop by giving the other machines in your system access to the data and files on the CE device." *Id.* at 328. "This is especially important given that the data on these devices wouldn't be worth very much if you couldn't get that data circulated to other machines and other pieces of software." *Id.*

## D. IPR Proceedings

In February 2016, Appellees filed two IPR petitions, one alleging that claims 1–10 and 58–65 of the '511 patent are rendered obvious by Kimura in view of the knowledge of a skilled artisan, and another alleging multiple grounds, including that claims 1–10, 19–22, 58–65, and 68–71 are rendered obvious by Goggin in view of the knowledge of a skilled artisan and/or other references. After Rosetta filed

its preliminary responses, in August 2016 the Board issued decisions instituting IPR on each petition and consolidated the two proceedings. The Board declined to institute review of claims 7 and 64 of the '511 patent in the Kimura IPR, but instituted with regard to the remainder of the challenged claims. The Board instituted on all of the challenged claims in the Goggin IPR. Rosetta filed a consolidated response, Appellees filed a reply, and an oral hearing was held.

In August 2017, the Board issued a combined final written decision finding that claims 1–6, 8–10, 58–63 and 65 were unpatentable as obvious based on Kimura, and that claims 1–10, 19–22, 58–65 and 68-71 unpatentable as obvious based on Goggin in view of, for certain claims, other references. Administrative Patent Judge (APJ) Arbes dissented, agreeing with Rosetta's construction of "downstream data" and, as a result, disagreeing with the Board's obviousness determinations predicated on its construction of that term.

Rosetta appeals the Board's obviousness findings based on Kimura and Goggin, as well as two claim constructions made by the Board during those appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

A. Claim Constructions

We review the Board's underlying factual determinations concerning extrinsic evidence for substantial evidence and its ultimate constructions *de novo*. *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279–80 (Fed. Cir. 2015). The parties dispute the Board's constructions of the terms "downstream data" and "network server." We affirm with respect to both terms.

### 1.  "Downstream Data"

The Board construed "downstream data" to mean "data moving from a downstream channel to the wireless intelligent personal network server."  J.A. 19.  The Board supported its construction with citations from the specification tying the term "downstream data" to the channel from which it is received.  The channel is illustrated in the specification and drawings as downstream channel 34.  J.A. 17; '511 patent at col. 5, ll. 35–36, FIG. 1.  The Board contrasted "downstream data" with "upstream data," which travels along upstream channel 26.  J.A. 17; '511 patent at col. 7, ll. 26–30, FIG. 1.  The Board concluded that the specification associates the words "downstream" and "upstream" with particular channels and/or networks, rather than the ultimate source or destination of any data.  J.A. 17.

Rosetta argues that "downstream data" should be construed to mean "data transmitted from a source server to the personal network server."  Appellant's Op. Br. at 15.  Rosetta explained at oral argument that, as to FIG. 1, it believes the "source server" is a server within Enterprise IT system 12.  Oral Argument at 3:15–57.  In its patent owner response, Rosetta argued that all data flowing from top to bottom of FIG. 1 is "downstream" and all data flowing from bottom to top of FIG. 1 is "upstream."  *See* J.A. 14.  FIG. 1 is provided below for context:



FIG. 1

'511 patent at FIG. 1.

Although we acknowledge that APJ Arbes's reasoning for supporting Rosetta's proposed construction has some merit, we ultimately decline to read the added limitation Rosetta proposes into the claims. "Source server" does not appear in the claims, nor does it appear in the specification. Rosetta's construction fails to account for the specification's disclosure of a file traveling from a non-server (*e.g.,*

computer 14) to the WIPS without traveling through a "source server." *See* '511 patent at col. 6, l. 51 – col. 7, l. 13; FIG. 1. FIG. 1 also contradicts the notion that all data must travel in only one direction between different devices in the disclosed system. Rather, FIG. 1 depicts an arrow *in both directions* between the WIPS and display device 32, and the specification states that "WIPS 30 is able to transfer the data stored in its memory *to and from* different types of display devices 32," *id.* at col. 4, ll. 48–50 (emphasis added).

We also disagree that the Board's construction gives no effect to the word "downstream." *See* J.A. 75 (APJ Arbes's dissent). To the contrary, we agree with the Board that the term "downstream" signals the channel or direction in which the data is traveling, *i.e.*, toward or away from the WIPS. J.A. 17–18. We therefore agree with the Board's construction of "downstream data."

### 2. "Network Server"

The Board determined that no construction of "network server" was necessary but explicitly found that the network server disclosed in the '511 patent could communicate with a computer over a point-to-point connection. J.A. 13. The Board referred to the specification's statement that "display device 32 accesses the memory in WIPS 30 as it would an external device, such as an external hard drive" as support for its finding that the network server can communicate with a computer over a point-to-point connection. J.A. 12 (citing '511 patent, col. 6, ll. 25–27). The Board also cited a dictionary definition of "computer network" as "a complex consisting of two or more interconnected computers" as supporting its conclusion. *Id.*

Rosetta argues that a network server must be able to communicate with more than one other computer. Rosetta believes the term should be construed as meaning "a computer in a network configured to receive and share data resources with other devices in that network." Appellant's

Op. Br. at 34, 37–38. Rosetta argues that the quoted statement from the specification described the ease with which a display device could access the WIPS memory, not a specific type of connection. *Id.* at 38–39. But the Board's reading of this passage is reasonable and its ultimate construction of what connection is required was expressly and reasonably supported by extrinsic evidence. We agree with the Board's construction of "network server."

## B. Obviousness Findings

"We review the Board's ultimate determination of obviousness de novo and its underlying factual determinations for substantial evidence." *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 991 (Fed. Cir. 2017). "On the factual components of the inquiry, we ask whether a reasonable fact finder could have arrived at the agency's decision, which requires examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." *Id.* (internal brackets and quotation marks omitted).

### 1. Kimura

We agree with the Board's finding that Kimura renders the applicable claims obvious. Rosetta's argument to the contrary is primarily premised on its proposed claim construction, which we have already explained is incorrect. *See* Appellant's Op. Br. at 41–43. Rosetta's remaining arguments lack merit, as they distinguish Kimura on the basis of unclaimed features of WIPS, including being "a centralized network-based file system" or providing "a solution for having remote access to one's most recent emails." *Id.* at 40–41.

### 2. Goggin

We also agree with the Board's findings based on Goggin. Rosetta's primary argument again is predicated on the claim constructions we have rejected. *See id.* at 46–48. Rosetta's remaining argument is essentially that a skilled

artisan would have lacked a motivation to "combine[] . . . an infinite number of combinations to carry out any number of different functions" present in "hundreds of pages" of the Goggin reference. *Id.* at 48–49. We agree with the Board, however, that "an ordinarily skilled artisan would have pursued Goggin's file access functions because they constitute 'a finite number of identified, predictable solutions . . . within his or her technical grasp.'" J.A. 49 (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 402 (2007)). Goggin has an entire chapter focused on RAPI and highlights the importance of allowing "other machines in your system [to] access to the data and files on the CE device." *See* Goggin at 307–30. Goggin describes a "specific set" of elements to be implemented in order to accomplish this purpose (and render the claimed invention obvious)—reading and writing files on a network-connected Windows CE device. J.A. 46–49.

### 3. Objective Evidence of Nonobviousness

Rosetta argues that the Board "refus[ed] to consider" Rosetta's objective evidence. Appellant's Op. Br. at 50. To the contrary, the Board's relevant discussion on pages 31 to 34 of its decision is well-reasoned and supported by substantial evidence. Rosetta argued to the Board that the WIPS "satisfied a critical need for remote data access" and "took a different approach . . . to remote data access problems." *See* J.A. 32–33. The Board correctly found that nexus is not met where "remote data access" is not recited in the claims. *See id.* Rosetta further failed to establish a nexus between its evidence of praise and its $2 million grant and the features found in the claims, rather than WIPS generally. *See* J.A. 34.

We therefore affirm the Board's obviousness findings with respect to Kimura and Goggin.

## D. Remaining Arguments

Although Rosetta takes issue with the Board's denial of its request for leave to file a motion to amend after the Board's final written decision had issued, which it submitted after the release of *Aqua Products, Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017), we see no error in the Board's decision denying the motion. *See* Appellant's Op. Br. at 54–57; J.A. 87–90. As the Board noted, 35 U.S.C. § 316(d)(1) only permits motions to amend "[d]uring an inter partes review." J.A. 88. This means a motion to amend cannot be entertained *before* an inter partes review proceeding begins or *after* it ends. In the context of covered business method review, we have explained that proceedings begin with an institution decision and "conclude[]" with the final written decision. *Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372, 1377 (Fed. Cir. 2015) (explaining that covered business method review proceedings "begin[s]" when "the PTAB institutes the proceedings"); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1314-1315 (Fed. Cir. 2015) (noting that covered business method review "concludes with the PTAB's final written decision"). Inter partes review follows a similar structure, beginning with an institution decision and "culminating" in a final written decision. *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1364–65 (Fed. Cir. 2016). Rosetta's motion to amend, filed nearly two months after the final written decision, was therefore not filed "during" the inter partes review as required by § 316(d)(1). Instead, it was filed after the proceeding concluded. Indeed, Rosetta could have immediately appealed the Board's decision. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1377 (Fed. Cir. 2016). Rosetta also could not explain why, if it believed that the meaning of the term "downstream data" was "the central point" of the case, it could not have filed a motion to amend before the due date provided by the Board. We therefore affirm the Board's denial.

Last, we reject Rosetta's argument under Section 318(a) that the Board did not institute or render a final written decision as to two of the challenged claims during the Kimura review as moot, in light of our affirmance of the Board's decision finding these claims unpatentable under Goggin.

We have considered the parties' remaining arguments and find them unpersuasive.  Accordingly, we affirm.

**AFFIRMED**